# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE
COMPANY,

    Plaintiff,

v.                                                         Case No: 8:16-cv-127-T-30TBM

CODE 3 SECURITY & PROTECTION
SERVICES, INC, CHRISTOPHER H.
LEGAGNEUR and ROBERT OTTO
MANSPERGER,

    Defendants.

## **ORDER**

THIS CAUSE is before the Court on Third-Party Defendant CSU Producer Resources' Motion to Dismiss or, in the Alternative, Motion to Stay (Dkt. 23) and Third-Party Defendant Bay Area Insurance Group's Motion to Dismiss (Dkt. 24), and Third-Party Plaintiff's Response in Opposition (Dkt. 31). The Court has reviewed these filings, the third-party complaint (Dkt. 10), and the applicable law. The Court concludes that, under the unique facts of this case, the appropriate relief is to stay the third-party action until such time as the objectives underlying Rule 14(a) of the Federal Rules of Civil Procedure are more plainly served by impleading Third-Party Defendants.

### **FACTUAL BACKGROUND**

In May 2015, Defendant and Third-Party Plaintiff Code 3 Security, a company specializing in security guard services, acquired a general liability insurance policy from

Plaintiff Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"). According to Code 3's third-party complaint, the company acquired this policy with the help of Third-Party Defendants, insurance broker CSU Producer Resources ("CSU") and insurance agent Bay Area Insurance Group. (Dkt. 10, pp. 12-13).

While covered under its Cincinnati policy, Code 3 was sued in state court for negligent hiring and entrustment, among other counts, after one of its security guards allegedly shot, with an electronic Taser, the plaintiff in that case. Though Cincinnati elected to defend Code 3 in the underlying state court action (Dkt. 1, p. 9), the insurer filed this lawsuit seeking a declaration that the policy provides no coverage for the claims asserted in the underlying action, namely by reason of an "Assault or Battery" exclusion contained in the policy.

Code 3 answered and filed counterclaims. Code 3 also sued Third-Party Defendants CSU and Bay Area. In the third-party complaint, Code 3 noted that the policy did not contain a choice-of-law provision. It further alleged that, "in the event that the Court finds that no coverage exists for the negligence claims against Code 3 in the Underlying Lawsuit, and that Cincinnati has no duty to defend Code 3 from such a claim, such lack of coverage and defense obligations by Cincinnati were caused by Third Party Defendants' negligence, including breach of fiduciary duties under Maryland law, in failing to obtain appropriate coverage for Code 3." (Dkt. 10, p. 18). In short, the third-party complaint asserts the following: if Cincinnati had no duty to defend or indemnify, CSU and Bay Area's negligence will have been the reason why.

## DISCUSSION

CSU moves for a dismissal or a stay on the grounds that, without a coverage determination, any claim against an insurance broker has not accrued and is thus premature. (Dkt. 23, p. 2). Bay Area joins that argument in its motion, and adds that, as to it, the third-party complaint fails to adequately allege personal jurisdiction.

### I.   Jurisdiction

The Court will first address, as it must, Bay Area's argument that the third-party complaint should be dismissed for lack of personal jurisdiction. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) ("The [district] court should have addressed the personal jurisdiction question first."). The Court can just as quickly reject it. According to binding precedent interpreting the Federal Rules of Civil Procedure, a third-party cause of action falls within a court's ancillary jurisdiction and thus does not require independent jurisdictional grounds to be heard in federal court. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376-77, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978); *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 716-17 (5th Cir. 1970);[1] *see also* Fed. R. Civ. P. 14. Cincinnati's complaint properly alleged jurisdiction over Code 3. (See Dkt. 1, p. 2). Code 3's third-party complaint was not required to do the same with respect to Bay Area. *See Kroger*, 437 U.S. at 376-77.

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued before September 30, 1981).

## II.     Choice of Law

On the determinative issue, the question of ripeness to implead, the parties' diverge on a threshold issue: which state law applies. Code 3 argues that Maryland's does. CSU and Bay Area argue that Florida's does. As explained below, the Court concludes that, on the narrow question before the Court, neither does. The propriety of impleading third parties, like other matters covered by federal procedural rules, *see Burlington N. R. Co. v. Woods*, 480 U.S. 1, 8, 107 S. Ct. 967, 94 L. Ed. 2d 1 (1987) (Federal Rule of Appellate Procedure 38), is resolved by the application of federal law. *See id.* ("The choice [of law] . . . affects only the process of enforcing litigants' rights and not the rights themselves.").

Specifically, that law is Federal Rule of Civil Procedure 14(a), which allows a defendant to implead a non-party "who is or may be liable to [the defendant] for all or part of the claim against it." The rule implies that there could exist a second lawsuit—between the defendant in the first lawsuit (as third-party plaintiff), against a different defendant (as third-party defendant). But the rule's objective is to make for the more efficient administration of justice, "to reduce the litigation by having one lawsuit do the work of two." *U.S. v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967) (internal quotation marks and citations omitted). And although it "is sometimes a challenging endeavor" to classify laws as substantive or procedural, *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 428, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996), a careful review of the Erie Doctrine demonstrates that Rule 14 is indeed procedural.[2]

---

[2] One area in which this endeavor is not challenging, said the Supreme Court in *Gasperini*, is in "matters covered by the Federal Rules of Civil Procedure." *Id.* at 427 n.7. The Court went on:

4

In *Guaranty Trust Co. of N.Y. v. York*, the Supreme Court, in refining the Erie Doctrine, established the "outcome-determination" test for ascertaining whether an issue before a federal court is substantive or procedural, and thus whether state or federal law should resolve it. 326 U.S. 99, 108-09, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945). The analysis in each case, the Court concluded, could be boiled down to a question: "[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* at 109. If the answers is no, then the issue is procedural, and federal law should resolve it—and vice versa.

Later, the Supreme Court regarded this question as simplistic, and instructed that the outcome-determination test should not be applied mechanically. Instead, the Court reasoned, the choice of law should also be guided by "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S. Ct. 1136, 1142, 14 L. Ed. 2d 8 (1965); *see Gasperini*, 518 U.S. at 428. Applying these aims, the Court in *Hanna* rejected the petitioner's argument that the state rule for service of process should apply over Rule 4 of the federal rules, even though that choice would ultimately determine the victor in the lawsuit. The Court reached this holding, in the face of the *York* precedent, in part because

---

"It is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." *Id.* But because this order breaks with the analysis of courts in this district in similar cases, see note 3, the Court will carry out the *Erie* analysis so as to demonstrate more precisely where the break lies.

the "[p]etitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery," and therefore "the difference between the two rules would be of scant, if any relevance to the choice . . . ." *Id.* at 469.

The *Hanna* holding was motivated by another consideration: the Rules Enabling Act, 28 U.S.C. § 2072, which grants the Supreme Court the authority to promulgate federal rules of civil procedure. The Court found that "*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts . . . ." *Id.* at 473. "To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Id.* at 473-74. For these reasons, the Court held that the method of service of process prescribed in Rule 4 of the Federal Rules of Civil Procedure—despite its conflict with a Massachusetts rule, and despite the federal rule's impact on the litigation's outcome—was the applicable law. *Accord Burlington*, 480 U.S. at 8.

Here, like in *Hanna*, the rule at issue—Rule 14—is one contained in the Federal Rules of Civil Procedure. But unlike in *Hanna*, both the outcome-determination test and the *Erie* objectives are well served by applying Rule 14 to the third-party complaint against CSU and Bay Area. First, as for outcome-determination, both CSU and Bay Area point out in their motions that the common law of negligence and fiduciary breach—and specifically, the presence of damages—will ultimately determine the merits of Code 3's claims against them, should those claims accrue. Their liability, if there indeed is any, will be contingent upon a finding that Code 3 was liable, too.

This is an accurate assessment of the parties' legal relationship. But the more relevant assessment, at least for purposes of determining the right choice of law, is the fact that this legal relationship is in no way changed by permitting Code 3 to name CSU and Bay Area as third-party defendants. Stated differently, a negligent insurance agent either will incur liability, or will not, as a result of a third-party plaintiff losing an underlying lawsuit; applying Rule 14 to the question of whether that agent can be *named* as a third-party defendant does not change this fact—that is, it does not "significantly affect the result of" the third-party negligence action. *Hanna*, 380 U.S. at 468.

As for the *Erie* concerns of forum shopping and inequitable outcomes, both Maryland and Florida law recognize the common law torts of negligence and breach of fiduciary duty, which Code 3 alleges in the third-party complaint. *Horton v. Freeman*, 917 So. 2d 1064, 1066 (Fla. 4th DCA 2006) (negligence); *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (breach of fiduciary duty); *see generally Blondell v. Littlepage*, 968 A.2d 678 (Md. App. 2009) (recognizing both claims under Maryland law). Both torts, in both states, require proof of damages.

Likewise, both states apply the same analysis to the construction of insurance contracts, which appears to be the principal legal issue in the underlying declaratory judgment action. *See Sphinx Intern., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1228 (11th Cir. 2005) (concluding that, under Florida law, "exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured") (internal quotation marks and citations omitted); *Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. App. 2001) (finding that "under

general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer"). Again, it is hard to see, at least in this case, how granting impleader under Rule 14—i.e. "having one lawsuit do the work of two," *Joe Grasso & Son*, 380 F.2d at 751—affects the state substantive rights the Erie Doctrine seeks to protect. But if it does, those rights, in all material respects, appear to be the same regardless of which law applies.

In sum, Federal Rule of Civil Procedure 14 regulates matters that can fairly be classified as procedural, *see Burlington*, 480 U.S. at 8, and it is consonant with the twin aims of the Erie Doctrine. *See Hanna*, 380 U.S. at 473-74. The Court therefore concludes that Rule 14 governs the issue now before it.[3]

---

[3] The Court is mindful of the cases from this district that view the propriety of insurance-agent impleader as a matter of state substantive law and thus confine the inquiry to whether the claim against the third-party defendant has accrued under that law. *See Mt. Hawley Ins. Co. v. Giant Oil, Inc.*, No. 8:09-cv-227-T-23TGW, 2010 WL 1525518, *2 (M.D. Fla. April 15, 2010) (Merryday, C.J.); *see also Allstate Ins. Co. v. Richard Zehr Const., Inc.*, No. 8:06-CV-407-T-27MSS, 2006 WL 2850438, *2 (M.D. Fla. Oct. 3, 2006) (Whittemore, J.) (in a declaratory judgment action filed by insurer against insured, dismissing as premature third-party negligence claim against insurance agent). The Court is also aware that, factually, those cases are in all material respects the same as this one. Nevertheless, the Court is compelled to respectfully diverge from the analysis employed there, for some of the reasons discussed above. A few reasons, however, require elaboration.

First, those cases recognized, by calling the third-party complaints "premature," that their dismissals did not hinge on resolving *whether* the state law permitted the defendant-insured to sue the third-party insurance agents, but rather *when* it did. *Mt. Hawley*, 2010 WL 1525518, *2; *see also Allstate*, 2006 WL 2850438, at *1. As it is with CSU and Bay Area here, allowing or disallowing those "premature" impleader claims—even if such a choice can be called "disregard[ing] a law of a [s]tate that would be controlling"—did not "significantly affect the result of [the] litigation . . . ." *York*, 326 U.S. 99, at 109. By way of illustration, suppose those claims never accrued, because for example the third-party plaintiff prevailed in the underlying action; the third-party claims would then have been dismissed on the merits of the state substantive law on the grounds that the plaintiff could not establish a necessary element of the claims—damages. Permitting the insurance agent to be named as a third-party defendant until such time as that happened does not affect in any way, let alone a significant way, this *result* of the litigation. The outcome—dismissal—occurs either way. And Rule 14 hardly determines it, a conclusion that

### III. Application of Federal Rule of Civil Procedure Rule 14

Rule 14(a) permits impleader in cases of secondary liability—that is, liability that derives from the liability the third-party plaintiff may incur as defendant in the main claim. *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). The Eleventh Circuit rejects the interpretation that Rule 14 does not permit impleader in declaratory judgment actions because those actions do not impose liability but merely declare rights and obligations between litigants. Such a reading, the court has held, "places too restrictive a meaning on the words" in the Rule. *Am. Fidelity & Cas. Co., Inc.*, 232 F.2d 89, 91 (5th Cir. 1956). Instead, Rule 14 allows a third-party claim if the third-party's liability "is in some way dependent on the main claim." *U.S. v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987).

---

militates in favor of applying Rule 14 exclusively, even before any consideration is given to the Rules Enabling Act and the precedent upholding it. *See Gasperini*, 518 U.S. at 427 n.7.

Moreover, the plain language of Rule 14(a) appears to approve of third-party complaints naming defendants against whom claims have not yet accrued, because the rule permits the service of third-party complaints "on a party who is or *may be liable* to it for all or part of the claim against it." (emphasis added). Indeed, third-party impleading "is only available when the third party defendant's liability is secondary to, or derivative of, the original defendant's liability on the original plaintiff's claims." *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). Rule 14, in other words, does not just anticipate potential, i.e. "contingent" liability, as *Mt. Fawley* and *Allstate* call it; it arguably requires it. At a minimum, the Rule, as the Court in *Gasperini* put it, is "in point." *Gasperini*, 518 U.S. at 427 n.7.

And finally, federal courts across the country, too numerous to count, apply Rule 14 to the issue of third-party impleader, even on "contingent" or un-accrued claims, even on those against insurance agents. *See, e.g. Discovery Grp. LLC v. Chapel Dev., LLC*, 574 F.3d 986, 989 (8th Cir. 2009) (rejecting state rule, citing Rule 14, and concluding that "[a]ppellants' cause of action for indemnity was not premature, even though it had not yet accrued when their third-party complaint was filed"); *U.S. Fire Ins. Co. v. Reading Mun. Airport Auth.*, 130 F.R.D. 38, 39 (E.D. Pa. 1990) (concluding, by applying Rule 14 alone, that defendant-insured's impleader of allegedly negligent insurance brokers, in an underlying declaratory judgment action filed by insurer, was improper); *Great Lakes Reinsurance (UK) PLC v. Roca*, No. 07-23322-CIV-MORENO/TORRES (S.D. Fla. Dec. 11, 2008) (applying Rule 14 and concluding, under similar circumstances, that impleader was appropriate). The Court is persuaded that the analysis in these cases is sound and embodies—by applying Rule 14 to motions to dismiss like those filed here—the federalism concerns of *Erie* and its successors.

In this circuit and elsewhere, third-party negligence actions against insurance agents in a declaratory judgment action filed by the insurer are viewed as precisely the kind of dependent claim Rule 14 should govern. *See, e.g.*, *S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1293 (N.D. Ga. 2013); *State College Area School Dist. V. Royal Bank of Canada*, 825 F. Supp. 2d 573, 579 (M.D. Pa. 2011) ("While [a] third-party claim must be based on the concept of secondary liability, whether that liability is labeled as indemnity, subrogation, contribution, warranty, or some other theory is irrelevant.") (internal quotation marks omitted) (citing 1 SINCLAIR ON FEDERAL PRACTICE, § 5:8:1). Ultimately, as with this kind of case or any other, the decision to permit a third-party action under Rule 14 is left "to the sound discretion of the trial court." *DeRubeis v. Witten Technologies, Inc.*, 224 F.R.D. 676, 682 (N.D. Ga. 2007) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1443 (2d ed. 1990)); *accord Gross v. Hanover Ins. Co.*, 138 F.R.D. 53, 54-55 (S.D. N.Y. 1991).

When weighing the decision, courts should consider the following factors: (1) the merits of the underlying action; (2) the merits of the third-party complaint; (3) the potential of impleader to complicate or delay the action; and (4) the prejudice to the impleaded party. *See* Wright, at § 1443; *accord Kopan v. George Washington University*, D.D.C., 67 F.R.D. 36, 37 (1975).

At this early stage in the litigation, these factors advise against impleading CSU and Bay Area. First, there are actually two underlying actions: the state court action and the federal declaratory action. Code 3 is the defendant in the state action and the insured in the federal declaratory action, which is to say that Code 3 is the presumptive prevailing party—

that is, it bears no burden of persuasion—in both cases. *See Sphinx Intern.*, 412 F.3d at 1228 (11th Cir. 2005). The merits of the underlying actions, in other words, at least as a matter of case posture (which is about all the Court can evaluate based on the record before it), favor Code 3.

Second, CSU and Bay Area, as Code 3 recognized in its third-party complaint, are only contingently liable to Code 3. By necessary implication, then, as the merits favor Code 3 in the underlying action, the merits favor CSU and Bay Area in the third-party complaint.

Third, the underlying declaratory judgment action will likely hinge on the interpretation of an exclusion provision in an insurance contract. Regardless of which state substantive law applies, Florida or Maryland, this task is a matter of law for the Court to resolve. *Coleman v. Fla. Ins. Guar. Ass'n*, 517 So. 2d 686, 690 (Fla. 1988); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 489 (Md. App. 1985). Impleading insurance brokers in no way aids the Court in performing the task, and doing so indeed has the potential to unduly delay and complicate an otherwise straight-forward case of contract construction. In such circumstances, the Court finds, a third-party action should not proceed.

But insurance coverage disputes often involve both questions of law and fact. *See, e.g.*, *Graham v. Lloyd's Underwriters at London*, 964 So. 2d 269, 273-74 (Fla. 2d DCA 2007). Cincinnati's declaratory judgment action may become such a case. To use just one example, if Code 3 can genuinely dispute whether the Taser incident was an assault or battery within the coverage exclusion, however that exclusion is ultimately construed, that dispute will be for the fact-finder to resolve. *See, e.g.*, *Sun Life Ins. Co. of Am. V. Evans*,

11

340 So. 2d 957, 959 (Fla. 3d DCA 1976) (holding that jury must determine whether plaintiff suffered "total disability" as that term is construed by law) (citing *Equitable Life Assurance Soc'y of U.S. v. Wiggins*, 155 So. 327, 329 (Fla. 1934)). Notably, claims of negligence and breach of fiduciary duties, which Code 3 levels (albeit contingently) against CSU and Bay Area, also involve issues of fact. Having carefully considered the factors used to evaluate the propriety of impleader, the Court is convinced that, if a fact-finder is needed to resolve a factual issue in the declaratory judgment action, then the principal aim of Rule 14—efficiency—will be served by having that same fact-finder resolve the related factual issues against CSU and Bay Area. At this point, however, that need is not clear. And until it is, impleader is premature.

For these reasons, the Court, exercising its discretion under Rule 14(a) of the Federal Rules of Civil Procedure, will stay the third-party action.

It is ORDERED AND ADJUDGED that:

1. Third-Party Defendant CSU Producer Resources' Motion to Dismiss or, in the Alternative, Motion to Stay (Dkt. 23) is GRANTED in part and DENIED in part.

2. Third-Party Defendant Bay Area Insurance Group's Motion to Dismiss (Dkt. 24) is DENIED.

3. Defendant/Third-Party Plaintiff Code 3 Security & Protection Services' third-party action (See Dkt. 10) is STAYED.

4. The Clerk is directed to administratively CLOSE the third-party action against Third-Party Defendants CSU Producer Resources, Inc. and Bay Area Insurance Group, LLC.

5. Any party may move to re-open the third-party action if the Court later determines that factual findings are required to resolve this case.

**DONE** and **ORDERED** in Tampa, Florida, this 12th day of May, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record